**Kevin KELLY, et al., Plaintiffs,**

*v.*

**UNITED STATES and J. Brian Atwood, in his official capacity as Administrator, United States Agency for International Development, Defendants.**

**No. Civ.A. 96–01892 CKK.**

United States District Court, District of Columbia.

Sept. 21, 1998.

Bridgett Read Mugane, Columbia, MD, for plaintiffs.

Diane Marie Sullivan, United States Attorney's Office, Washington, DC, for defendants.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

The five individual plaintiffs in this case seek judicial review pursuant to 22 U.S.C. § 4140(a) and 5 U.S.C. § 706(2)(A) of final decisions from the Foreign Service Grievance Board ("Board"). The Plaintiffs, former Senior Foreign Service Officers who were mandatorily retired from the United States Agency for International Development ("Agency"), argue that the Agency acted arbitrarily and capriciously when it refused to grant them Limited Career Extensions ("LCE"), which would have foreclosed their mandatory retirement in 1994. Pending before the Court are the Plaintiffs' Motion for Judgment on the Pleadings, the Defendants' Motion to Affirm the Decision of the Foreign Service Grievance Board and to Dismiss, and the Plaintiffs' Opposition thereto. After carefully reviewing the parties' briefs, the record submitted, and the governing law, the Court grants in part the Plaintiffs' motion, and remands to the Board for further proceedings consistent with this Memorandum Opinion.

### I. BACKGROUND

The relevant facts are undisputed and uncomplicated. Under the Foreign Service Act of 1980, Pub.L. No. 96–465, § 607(a), 94 Stat. 2096, 22 U.S.C. § 4007(a), Congress directed the Secretary of State to establish maximum "time in class limitations" ("TIC") for career members of the Senior Foreign Service. Selection Boards, known as "C/Boards," annually review Officers' performance files to determine who among the Service warrants

promotion. *See* 22 U.S.C. §§ 4001–4005. Pursuant to the TIC regime that the Foreign Service Act established, an Officer typically must be mandatorily retired if he or she does not garner a promotion to the next highest salary class within the maximum TIC prescribed by regulation. *See id.* § 4007(c). The Act, however, grants the Secretary circumscribed discretion to grant Limited Career Extensions ("LCE") to Officers who would otherwise face mandatory retirement. *See id.* § 4007(b).[1]

At all times relevant to this action, the Agency's own regulations provided that it was to conduct an LCE review in each of the two years preceding the expiration of an Officer's TIC. Plaintiffs, whose TICs were to expire in 1994, were therefore entitled to an LCE review in 1992. The Agency, however, refused to conduct a review for any of them during that year, claiming that economic and manpower uncertainties prevented the Agency from considering LCEs more than eighteen months from TIC expiration. On administrative appeal, the Board found the Agency's failure to conduct an LCE review to constitute a procedural error in violation of governing regulations. Pursuant to 22 C.F.R. § 905.1, the Board remanded the grievances to the Agency to permit it to convene a reconstituted C/Board that would retroactively consider whether the Plaintiffs would have been entitled to an LCE in 1992 had the Agency properly held a review for them. *See In re Kevin Kelley,* Case No. 95–82, at p. 3.

Although the reconstituted C/Board recommended that all five Plaintiffs should receive LCEs, the Administrator denied LCEs to each one of them. Plaintiffs appealed to the Board; that body subsequently affirmed the Administrator's decisions. Issuing a "generic" opinion whose reasoning, as sup-

plemented by accompanying individualized opinions, disposed of all of the Plaintiffs' grievances, the Board adopted the rationale advanced by the Administrator:

> The fundamental reason offered by the agency for why the Administrator would not have granted an LCE to grievant in 1992, even if he had been recommended, is that its consistent policy was not to grant LCE's more than 18 months in advance of an employee's TIC expiration date. In practice, that meant excluding officers whose TIC expired after December 31, 1993. It says this was primarily because of budget and program constraints and uncertainties as well as the related difficulty of forecasting senior personnel needs.
>
> We find the agency's evidence and argument persuasive.

Case No. 94–59, at p. 21. Although the Board had just recently found the Agency's routine refusal to offer LCE reviews to Officers who were more than 18 months from TIC expiration to violate governing regulations, the Board nonetheless relied on this same illegitimate practice to justify the Administrator's decision to deny LCEs once reviews were conducted. Finding no tension in this logic, the Board reasoned that though the Agency was required by regulation to conduct LCE reviews for the Plaintiffs in 1992, as a practical matter, once the reviews were held, the Agency could simply deny LCEs to the Plaintiffs as a matter of course because the review occurred in 1992. Instead of predicating decisions concerning LCEs on the criteria that the Agency had established, the Board conceded that "[t]he practical consequence of the agency policy of granting LCEs only to officers facing their final year of TIC eligibility is that the individual qualifications, assignment status, and future assignment prospects of officers not in

---

1. Section 4007(b) provides:
   Members of the Service whose maximum time in class under subsection (a) of this section expires—
   (1) after they have attained the highest salary class for their respective occupational categories, or
   (2) in the case of members of the Senior Foreign Service, while they are in salary classes designated by the Secretary, may continue to serve only under limited extensions of

their career appointments. Such limited extensions may not exceed 5 years in duration and may be granted and renewed by the Secretary in accordance with the recommendations of selection boards established under section 4002 of this title. Members of the Service serving under such limited career extensions shall continue to be career members of the Service.
22 U.S.C. § 4007(b).

their final year were immaterial to the agency's 1992 LCE decision." *In re Kevin Kelly,* Case No. 94–82, at p. 6.

Having exhausted their administrative remedies, the Plaintiffs brought suit in this Court on August 14, 1996.[2] Their two-count Complaint avers that the Board's decisions affirming the Administrator's denials of LCEs in 1992 was arbitrary and capricious. In addition, Plaintiffs also challenge the denial of LCEs in 1993.

## II. DISCUSSION

### A. *The standard of review*

The Foreign Service Act provides that the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, "shall apply without limitation or exception" to a district court's review of a Board decision. *See* 22 U.S.C. § 4140(a). In conducting this examination, "[t]he judiciary has a responsibility under the APA to set aside agency actions that are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *MD Pharmaceutical, Inc. v. Drug Enforcement Admin.,* 133 F.3d 8, 16 (D.C.Cir.1998) (quoting 5 U.S.C. § 706(2)(A)). "The scope of review under the 'arbitrary and capricious standard' is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Despite this deferential standard, the Court will "intervene to ensure that the agency has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action.'" *Petroleum Communications, Inc. v. F.C.C.,* 22 F.3d 1164, 1172 (D.C.Cir.1994) (quoting *State Farm,* 463 U.S. at 43, 103 S.Ct. 2856). Moreover, the agency's decision must evince "a rational connection between the facts found and the choice made." *State Farm,* 463 U.S. at 43, 103 S.Ct. 2856. Thus, this Circuit has held that "[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, we must undo its action." *Id.* (citing *American Tel. & Tel. Co. v. F.C.C.,* 974 F.2d 1351, 1354 (D.C.Cir.1992)).

### B. *The 1992 LCE denials were arbitrary and capricious*

The Board's decisions with respect to the 1992 LCEs cannot stand. Internal tensions, a paucity of factual findings, and incoherent reasoning plague the Board's decision as well as the Agency's arguments before this Court. First, and most obviously, it is arbitrary and capricious for the Board at once to find that the Agency is bound by regulations to conduct an LCE review in 1992, yet concomitantly deprive that review of any substantive worth. In its earlier decision, the Board rejected the Agency's policy of denying LCE reviews to Officers whose TIC expiration remained more than 18 months away. Not surprisingly, the Board observed that the regulations mean what they say: that the Agency must offer an LCE review in an Officer's penultimate year of his TIC. In turn, the Board concluded that no matter how uncertain the Agency's budget and manpower needs may be, it had no discretion to deviate from the plain command of its own regulations. Yet in affirming the Administrator's denials of LCEs in 1992 to the Plaintiffs, the Board essentially commits the same error. If, as the Board has found, the Agency may not invoke personnel and financial ambiguities to justify denying outright an Officer's LCE review, then such concerns can no more justify the Agency from denying outright the actual LCE. To hold otherwise would transform the formal right to an LCE review that the Board recognized into nothing more than a sham proceeding. Where the outcome is preordained, the hearing operates as little more than an empty, irrational process rather than a substantive inquiry.

To appreciate the arbitrary nature of the Board's decision, one need look no further than the decision itself.

The practical consequence of the agency policy of granting LCEs only to officers facing their final year of TIC eligibility is that the individual qualifications, assignment status, and future assignment pros-

---

**2.** The Foreign Service Act of 1980 requires plaintiffs to file suit in district court within 180 days of the Board's decision. *See* Pub.L. No. 96–465, § 1110, 94 Stat. 2148, *codified as amended,* 22 U.S.C. § 4140(a). Plaintiffs satisfied this jurisdictional requirement.

pects of officers not in their final year were immaterial to the agency's 1992 LCE decision. These factors only become material in the final year of TIC eligibility, when the officer is reviewed for an LCE in light of the criteria contained in Handbook 25, Section 38K4.

*In re Kevin Kelly*, Case No. 94–82, at p. 6. An Officer's temporal proximity to mandatory retirement assumes dispositive importance under the Board's decision. The various criteria that the Agency is to consult when deciding to whom to grant LCEs—qualifications, assignment status, and future assignment prospects—are marginalized to a nonoperative periphery.[3]

This is not to say, of course, that the concerns that animate this policy—increasingly uncertain budgetary support and corresponding uncertainty concerning personnel needs—are irrelevant. To the contrary, it would be entirely appropriate for an Administrator to factor into his or her decision the current and projected budgetary and manpower needs of the agency. Yet to concede that such considerations may play integral roles in calculating who should receive LCEs is not say that the Agency may adopt an irrational and arbitrary date beyond which it will consider no other germane variables.

This leads naturally to the second ground on which this Court finds the Board's decision to be arbitrary and capricious. From the Board's generic opinion, two principal reasons were advanced to justify the LCE denials. First, the Board concurred with "[t]he fundamental reason offered by the agency for why the Administrator would not have granted an LCE to grievant in 1992 . . . [which] is that its consistent policy was to not grant LCE's more than 18 months in ad-

vance of an employee's TIC expiration date." Case No. 94–59 at 21. Second, the Board agreed that the policy was properly based on "budget and program constraints and uncertainties as well as the related difficulty of forecasting senior personnel needs." *Id.*

Although the Board indicated that it "f[ound] the agency's evidence and argument persuasive," *id.*, there is a conspicuous absence of a single factual finding to support this conclusion. Perhaps believing that the issue was too obvious to warrant actual factual findings, the Board opined conclusorily that "[i]t is beyond dispute that USAID, like other foreign affairs agencies, has been under severe budgetary pressures that required a downsizing of personnel." *Id.* At the very least, however, the evidence that the Plaintiffs have marshaled, belies the Board's unqualified claim that the budgetary personnel constraints are "beyond dispute." For example, Plaintiffs cite to AID's own Congressional Presentations, which demonstrate that the Agency's operating expense budget increased, not decreased, from 1991 through 1993.[4] *See* Pl.'s Mem. in Opp'n to Defs.' Mot. to Affirm and to Dismiss at Ex. 1.

Nothing remotely approximating a factual finding lurks in the Board's decision. The closest facsimile is not so much a factual finding, as it is an example of classical circular reasoning. Presumably in support of its conclusion that budget crises justified the Agency policy, the Board noted that "each year the agency reduced the number of LCEs granted, from over 40 in 1991 to only six in 1993." *Id.* This conflates cause and effect. Diminishing LCEs could result from any number of factors. It certainly does not substitute for a genuine finding of fact about

---

3. The Agency's Answer to the Complaint makes an admission that underscores the arbitrary and capricious dimensions of the Board's decision. Paragraph 26 of the Complaint avers: "The Administrator was to make the final LCE decisions based on criteria specified in Agency regulations: the need to complete an overseas assignment, or a critical need for the individual's skills and experience." Compl. ¶ 26. To this the Agency responded, "Admitted." Answer ¶ 26. This admission spawns an irreconcilable tension with the Board's decision; for if the Administrator was to ground LCE decisions in specific criteria specified in Agency regulations, it was arbitrary

and capricious for the Board to consign those same considerations to the status of "immaterial to the agency's 1992 LCE decision." *In re Kevin Kelly*, Case No. 94–82 at p. 6.

4. From fiscal years 1991 through 1993, AID's operating-expenses budget was, respectively: $443,027,000; $485,229,000; and $528,528,000. Although the Agency points out that it received less funding than it requested from Congress, it never refutes the Plaintiffs' evidence that the Agency's budget actually increased during this three-year period.

AID's budget. Moreover, Plaintiffs have proffered an equally persuasive explanation for the reduction in LCEs during this period: "More rigorous written LCE criteria adopted in December 1991 decreased the number of LCEs granted. . . ." Pls.' Mem. in Opp'n to Defs.' Mot. to Affirm and to Dismiss at 8. It does not matter whether Plaintiffs' hypothesis is valid because, at bottom, the Board's decision remains bereft of a single factual finding. The Board's failure to make factual findings demonstrates that it failed to "examine the relevant data and articulate a satisfactory explanation for its action *including a rational connection between the facts found and the choice made*." *State Farm*, 463 U.S. at 43, 103 S.Ct. 2856 (emphasis added). It must be set aside as arbitrary and capricious.

█ Moreover, 22 U.S.C. § 4137(a) mandates that the Board's decisions "shall include findings of fact." The Board's inexplicable choice not to undergird its conclusions with findings of fact thus contradicts an express congressional command. By ignoring § 4137(a)'s fact-finding requirement, the Board violated the APA's "not in accordance with law" standard. *See* 5 U.S.C. § 706(2)(A). As this Court previously has held, "[r]egardless of whether the Board acted properly in this instance, its failure to include findings of fact and reasons for its decision . . . violates . . . 22 U.S.C. § 4137(a)." *Daniels v. Wick*, 655 F.Supp. 26, 38 (D.D.C.1985), *rev'd on other grounds*, 812 F.2d 729 (D.C.Cir.1987). Although the duty to make factual findings is by no means onerous, it is an irreducible minimum that the Board must satisfy. The absence of factual findings in the Board's decisions is arbitrary, capricious, and not in accordance with law.

C. *Board's decision with respect to Charles Johnson's 1993 LCE denial was arbitrary and capricious*

When Plaintiff Charles Johnson came before the C/Board for his 1993 LCE review, he appeared to satisfy the criteria for granting discretionary LCEs. First, he had an overseas tour that could not be completed before his TIC expiration in 1994. Second, he argued that the Agency had a critical need for his specific skills, expertise, and experience. The 1993 C/Board recommended Johnson and ranked him third to receive an LCE. *See In re Charles W. Johnson*, Case No. 94–60 at p. 7 (ROP Johnson 391). Pursuant to the Agency's Handbook 25, section 38K4d(1):

> LCEs may be granted by the Administrator or his designee only when the employee has been recommended by the C/Board for such and LCE and *either:*

> The LCE is necessary to allow the employee to complete his/her *present tour*, provided it is in the Agency's interest to do so. For the purpose of LCEs, overseas tours are defined as two years for one tour poses and four years for all two tour posts and SMG positions.

That year, the Agency granted six LCEs, but Johnson, though he was ranked third by the C/Board and satisfied the criteria of Handbook 25, section 38K4d(1), was passed over in favor of lower ranked Officers.

On appeal, the Board affirmed the Administrator's denial. While recognizing that Johnson's qualifications fell within the regulations, the Board found that section 38K4d(1) did not impose upon the Administrator a mandatory duty to grant an LCE to anyone who satisfied the criteria. Rather, the Board emphasized that the regulations vest the Administrator with discretion to grant an LCE to Officers who satisfy the criteria and for whom an LCE will be "in the agency's interest to do so." The Board concluded: "Given the Administrator's discretionary authority and the budget and program uncertainties and constraints that limited the number of LCEs that could be granted, however, we find nothing unreasonable or in violation of the cited regulation in the Administrator's denial of an LCE to grievant." *In re Charles W. Johnson*, Case No. 94–60, at p. 13 (Record of Proceedings, Johnson at p. 385).

█ The Board's decision is arbitrary and capricious. As the Supreme Court and our Circuit have recognized, "[t]o enable us to fulfill our duty, 'an agency must cogently explain why it has exercised its discretion in a given manner,' and that explanation must

be 'sufficient to enable us to conclude that the [agency's action] was the product of reasoned decisionmaking.'" *A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1491 (D.C.Cir.1995) (quoting *State Farm*, 463 U.S. at 48, 52, 103 S.Ct. 2856) (internal citations omitted). Where, as here, the agency has discretion to exercise, "[t]he normal rule ... is that the agency must give sufficient indication of the grounds for its exercise of discretion that the reviewing tribunal can appraise that determination under the appropriate standards of review." *Matlovich v. Secretary of Air Force*, 591 F.2d 852, 857 (D.C.Cir.1978). While the Board explains why section 38K4d(1) does not impose a mandatory duty to grant an LCE to a qualifying Officer and why 22 U.S.C. § 4007(b)(2) does not compel the Administrator to grant LCEs based on the C/Board's strict ordinal ranking of candidates, it never affirmatively offers any rationale to explain why the Administrator chose not to grant an LCE to Johnson. Instead of articulating a "cogent explanation," the Board concludes that "although the grievant was highly ranked by the C/Board, the Administrator *could have had* legitimate management reasons for determining that it was in the agency interest to grant LCEs to other, lower-ranked officers." Johnson ROP, at p. 385, Case No. 94–60 at, p. 13 (emphasis added). This passage underscores how even the Board was unable to divine the "legitimate management reasons" that may have animated the Administrator's decision. Merely speculating that the Administrator "could have had" a reasonable basis for denying an LCE to Johnson falls far short of the Agency's duty to "cogently explain why it has exercised its discretion in a given manner." *State Farm*, 463 U.S. at 48, 103 S.Ct. 2856. Where the Board reflexively presumes that the Administrator "could have had" a reason for his decision, the Court cannot conclude that its action "was the product of reasoned decisionmaking." *Id.* at 52, 103 S.Ct. 2856. ▮ Moreover, while it is axiomatic that an agency must provide adequate explanation before it treats similarly situated parties differently, *see, e.g., New Orleans Channel 20, Inc. v. F.C.C.*, 830 F.2d 361, 366 (D.C.Cir. 1987); *Public Media Ctr. v. F.C.C.*, 587 F.2d 1322, 1331 (D.C.Cir.1978), "the converse is

also true." *Petroleum Communications, Inc. v. F.C.C.*, 22 F.3d 1164, 1172 (D.C.Cir. 1994). This Circuit has held that "[a]n agency must justify its failure to take account of circumstances that appear to warrant different treatment for different parties." *Id.* From this principle springs the Agency's obligation to articulate some reason why it chose to grant LCEs to lower-ranked Officers than Johnson. To state, as the Board does, that congressional law does not *mandate* that the Agency grant LCEs based on raw rankings does not explain why it chose to deny Johnson an LCE. Although there may not be anything talismanic about the C/Board's ranking of Officers, it is one of those "circumstances that appear[s] to warrant different treatment for different parties." *Id.* Accordingly, the Board "must justify its failure" to explain why Johnson was denied one of the LCEs granted to lower-ranked Officers.

### D. *The Board arbitrarily and capriciously failed to address John Lovaas's 1993 LCE denial.*

The Agency argues that this Court lacks jurisdiction to hear John Lovaas' appeal of his 1993 LCE denial because he allegedly failed to exhaust his administrative remedies properly. To be sure, Lovaas did not include the 1993 decision in his initial grievance. Within the applicable three-year statute of limitations, however, *see* 22 U.S.C. § 4134(a), Lovaas wrote a detailed letter to the Board that indicated his intent to add his 1993–LCE denial to his grievance. The Agency never opposed Lovaas's attempt to amend his grievance nor did it move to strike.

▮ By refusing to consider Lovaas's amended grievance, the Board acted arbitrarily and capriciously. According to governing regulations:

In the event that the Grievance Board finds that a grievance has not been presented for agency consideration or that a grievance has been expanded or modified to include materially different elements, the Board shall return the grievance to the official responsible for final agency review *unless the agency waives any objection to*

**16**

*Board consideration of the grievance without such review.*

22 C.F.R. § 16.11(b) (emphasis added). While the Agency could have objected to Lovaas's amendment, it chose to sit idly by while the administrative process proceeded. Given the ease with which the Agency could have preserved its objection, it must be deemed to have waived whatever objections it might have had by failing to oppose Lovaas's amendment. Accordingly, the Board's failure to consider Lovaas's 1993–LCE denial was arbitrary and capricious.[5] Plaintiffs, however, make no argument about 1993 LCE denials except for Johnson and Lovaas. Accordingly, the Board's decisions with respect to the other three Plaintiffs' 1993–LCE denials are affirmed.[6]

### III. CONCLUSION

The Board's decisions with respect to the 1992–LCE denials and Johnson's 1993–LCE denial are arbitrary, capricious, and not in accordance with law. Moreover, its failure to consider Lovaas's 1993–LCE denial is arbitrary and capricious. The bulk of the Board's errors consist of inadequate factual findings and inchoate rationales. Therefore, "[r]ather than substitute our judgment for that of the Board, or second guess whether the Board applied the proper standards, the more appropriate remedy is to remand to allow the Board an opportunity to remedy its initial decision consistent with this opinion," the APA, and 22 U.S.C. § 4137(a). *Daniels,* 655 F.Supp. at 38.

---

5. In its brief before this Court, the Agency argues that were the Court to find jurisdiction, it should nonetheless affirm the denial of Lovaas's 1993 LCE denial because the same reasons that animated the 1992 decisions would govern. Apart from the fact that this Court already has concluded that the 1992 decisions were arbitrary and capricious, the Court rejects the Agency's alternative basis for dismissal as "an impermissible post hoc rationalization." *Appalachian Power Co. v. E.P.A.,* 135 F.3d 791, 821 (D.C.Cir.1998); *see also Unbelievable, Inc. v. NLRB,* 118 F.3d 795, 809·n. 3 (D.C.Cir.1997). "This principle,

grounded in the reasoning of *SEC v. Chenery Corporation and Citizens to Preserve Overton Park,* requires that courts adjudicate agency actions based solely on the grounds relied upon by the agency." *SBC Communications, Inc. v. F.C.C.,* 138 F.3d 410, 418 (D.C.Cir.1998) (citations omitted).

6. On remand, Plaintiffs Johnson and Lovaas should be permitted to conduct any reasonable discovery germane to their 1993 LCE denials.