R&JTool v. Manchester Tool          CV-99-242-M    01/10/01

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


R & J Tool, Inc.,
     Plaintiff

     v.                                    Civil No. 99-242-M
                                           Opinion No. 2001 DNH 009
The Manchester Tool Company,
     Defendant


**O R D E R**


R & J Tool ("RJT") brings this action seeking declaratory, injunctive, and monetary relief.  Specifically, it seeks a declaration that it does not infringe United States Patent Number 4,629,372 (the "'372 patent") held by defendant, The Manchester Tool Company ("Manchester").  In the alternative, RJT seeks a declaration that Manchester is barred by the doctrine of laches from claiming RJT infringes the patent.  In support of its pursuit of monetary damages, RJT asserts that Manchester has violated Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. Finally, RJT brings a state common law claim for tortious interference with business relations, over which it says the court may properly exercise supplemental jurisdiction.

Manchester moves to dismiss RJT's antitrust claims and to strike its tortious interference claim.  <u>See</u> Fed. R. Civ. P. 12(b)(6) and 12(f).  RJT objects.

**Background**

RJT is a New Hampshire corporation in the business of sharpening cutting inserts used in milling machines.  As part of that business, it says it has been sharpening inserts manufactured by Manchester since approximately 1991.  It receives used cutting inserts from their owners, sharpens them, and sends them out to a third party for coating.  The third party then returns the inserts directly to the owners for re-use.  One of the inserts RJT sharpens, known as the "Separator," is manufactured by Manchester and described and claimed in the '372 patent.

In May of 1999, Manchester notified RJT that its Separator inserts are intended for single use and asserted that RJT's sharpening of those inserts (enabling repetitive use) constituted an impermissible reconstruction of Manchester's patent.  Shortly

2

thereafter, apparently anticipating a patent infringement suit by Manchester, RJT filed this declaratory judgment action.

In support of its antitrust claims, RJT says it had a contract to sharpen a sizable number of cutting inserts used at the Daimler Chrysler plant in Kokomo, Indiana. After Manchester notified employees of the Indiana plant that RJT was infringing the '372 patent by sharpening Separator cutting inserts, Daimler Chrysler "cease[d] their consignment to R&J Tool of all cutting inserts to be sharpened." Amended complaint at para. 23. RJT claims that by informing Daimler Chrysler of its view that RJT's conduct violated the '372 patent, Manchester "knowingly and impermissibly broadened the temporal [sic] scope of the '372 patent by preventing R&J Tool from sharpening both patented and unpatented inserts for Daimler Chrysler in Kokomo, Indiana, and impermissibly leveraged their market power." Amended complaint at para. 24. And, as to its state common law claim, RJT alleges that, "Manchester's false statements that R&J Tool is infringing its patent, and the subsequent prevention of R&J Tool from sharpening both patented and unpatented inserts for Daimler

3

Chrysler" constitutes tortious interference with advantageous business relations.  Amended complaint at para. 43.

## Discussion

I.   <u>RJT's Antitrust Claims – 15 U.S.C. § 2</u>.

Section 2 of the Sherman Antitrust Act makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States."  15 U.S.C. § 2.  <u>See also</u> 15 U.S.C. § 15(a) (granting a private right of action under the Act to "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws.").  To prevail on a claim brought under section 2, a plaintiff must plead and prove two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." <u>United States v. Grinnell Corp.</u>, 384 U.S. 563, 570-71 (1966).  Thus, as an initial matter, a plaintiff must identify a valid and relevant

4

market in which the defendant is alleged to have unlawfully wielded monopoly power. See <u>Double D Spotting Service, Inc. v. Supervalu, Inc.</u>, 136 F.3d 554, 560 (8th Cir. 1998) ("It is the plaintiff's burden to define the relevant market. Antitrust claims often rise or fall on the definition of the relevant market.") (citation omitted); <u>Queen City Pizza, Inc. v. Domino's Pizza, Inc.</u>, 124 F.3d 430, 436 (3rd Cir. 1997) ("Plaintiffs have the burden of defining the relevant market.").

The relevant market is defined in terms of both product and geography. See <u>Flegel v. Christian Hosp., Northeast-Northwest</u>, 4 F.3d 682, 689 (8th Cir. 1993). In this case, the relevant product is plainly industrial cutting inserts, including, but not limited to, Manchester's Separator.

> [T]he outer boundaries of a relevant market are determined by reasonable interchangeability of use. Interchangeability implies that one product is roughly equivalent to another for the use to which it is put; while there may be some degree of preference for the one over the other, either would work effectively.

<u>Queen City Pizza</u>, 124 F.3d at 437 (citations and internal quotation marks omitted). See also <u>United States v. Grinnell</u>

5

<u>Corp.</u>, 384 U.S. at 571 ("In case of a product it may be of such a character that substitute products must also be considered, as customers may turn to them if there is a slight increase in the price of the main product.").

As to the relevant geographic market, RJT alleges that it is limited to the market for cutting inserts at the Daimler Chrysler plant in Kokomo, Indiana.

> On information and belief, Daimler Chrysler in Kokomo, Indiana, has standardized the majority of its tooling for cut-off operations to use Manchester's Separator inserts.  On information and belief, <u>the standardization by Daimler Chrysler in Kokomo, Indiana, of the majority of its tooling for cut-off operations effectively precludes the purchase of any other cut off inserts</u> than Manchester's Separator inserts for that tooling due to the high cost of changing said tooling.  On information and belief, Daimler Chrysler in Kokomo, Indiana, purchases over $5 Million worth of cutting inserts per year.  On information and belief, Manchester has been selling quantities of cutting inserts, including Separator inserts, sufficient to establish market power in <u>the market for cut off inserts at Daimler Chrysler in Kokomo, Indiana</u>.

Amended complaint at paras. 17-20 (emphasis supplied).  RJT's amended complaint plainly suffers from several deficiencies.

First and perhaps most fundamentally, the fact that the Daimler Chrysler plant in Kokomo voluntarily chose to outfit its tooling machinery with Manchester's cutting inserts (a decision that Daimler Chrysler does not appear to believe was in any way unfairly compelled by Manchester) does not, without more, suggest that it is "precluded" from using cutting inserts from manufacturers other than Manchester, notwithstanding the fact that such a change might involve retooling costs. Nor does it suggest that Manchester engaged in any form of anti-competitive conduct in securing Daimler Chrysler's agreement to choose its particular cutting insert from a number of available competing products. Nor is it clear from the amended complaint precisely how Daimler Chrysler's decision to utilize Manchester's arguably non-reusable cutting inserts (notwithstanding the potential negative economic impact that decision might have had on RJT's sharpening business) gives rise to a viable antitrust claim by RJT against Manchester.

Nevertheless, assuming RJT could allege the essential elements of a viable antitrust claim against Manchester and

7

turning to the specific allegations set forth in the amended complaint, it is plain that RJT has failed to adequately allege a relevant "market."  In that regard, its allegations are substantially similar to those rejected by the court of appeals in <u>Double D Spotting Service</u>, <u>supra</u>.  To be sure, the facts in this case are plainly distinguishable in some respects from those in <u>Double D</u>.  Here, for example, the plaintiff is not a competitor of any named defendant; RJT did not, for example, lose the opportunity to supply Daimler Chrysler with cutting inserts as a result of Daimler Chrysler's decision to purchase inserts from Manchester.  Instead, RJT simply provides services to a third party purchaser of defendant's products - services that might have been rendered obsolete by the third party's decision to use disposable, rather than reusable, products.[1]

_____

[1]    It is, perhaps, important to note that RJT does <u>not</u> allege that Manchester is a competitor in the resharpening business or that Manchester unlawfully wielded monopolistic power in an effort to channel sharpening business away from RJT and toward Manchester.  Instead, it appears that RJT claims only that Daimler Chrysler decided to terminate its contract with RJT after learning that Manchester viewed the Separator cutting inserts as single-use, disposable products, that could not be sharpened and reused without violating the '372 patent.  (Patents, of course, grant lawful monopolistic power to an extent.)

8

Nevertheless, for purposes of defining the relevant market, the court's holding in Double D is informative.

> In each of the four antitrust counts of its complaint, Double D states that Supervalu and World Super Services engaged in anticompetitive activity within the relevant market "for unloading services at the Supervalu, Inc. warehouse in Urbandale, Iowa." Thus, the product market is defined as unloading services and the geographic market is alleged to be Supervalu warehouse in Urbandale, Iowa, which is a suburb of Des Moines. We agree with the district court that, as a matter of law, this stated geographic market is too narrow to support a claim of an antitrust violation. At issue is one contract between the owner of one particular warehouse within the Des Moines metropolitan area and one unloading service provider. The contract provides that this one unloading service provider has the right, subject to an agreed upon price schedule, to provide all of the unloading services at this particular warehouse. Supervalu's one warehouse in Urbandale does not amount to a relevant market for unloading services of this type.

Double D Spotting Service, 136 F.3d at 560. See generally United States v. Grinnell Corp., 384 U.S. at 576 ("the relevant market for determining whether the defendants have monopoly power is not the several local areas which the individual stations serve, but the broader national market that reflects the reality of the way in which they built and conduct their business.").

9

Here, the amended complaint does little more than state RJT's commercial disappointment at losing its agreement with Daimler Chrysler to sharpen cutting inserts (both those manufactured by Manchester and other, non-patented inserts) used at the Kokomo plant. See Double D Spotting Service, 136 F.3d at 561 ("Disappointment at not receiving one unloading contract at one particular warehouse is insufficient as a matter of law to rise to the level of an antitrust violation within a relevant market.").

At the core of RJT's amended complaint is no-doubt its belief that Manchester caused it to suffer economic loss by wrongfully notifying it and Daimler Chrysler that, by sharpening Separator cutting inserts and essentially turning them into reusable products, they were infringing the '372 patent. Critically, however, "the antitrust laws do not preclude patentees from putting suspected infringers on notice of suspected infringement. . . . Rather, they are designed to promote competition to the advantage of consumers, not for the protection of competitors." Virginia Panel Corp. v. MAC Panel

10

<u>Co.</u>, 133 F.3d 860, 873 (Fed. Cir. 1997) (citation omitted).

Consequently, the Supreme Court has observed:

> It is axiomatic that the antitrust laws were passed for the protection of competition, not competitors. Earlier this Term, we held in the Sherman Act § 2 context that it was not enough to inquire whether the defendant has engaged in "unfair" or "predatory" tactics; rather, <u>we insisted that the plaintiff prove a dangerous probability that the defendant would monopolize a particular market</u>. Even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws; those laws do not create a federal law of unfair competition or purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.

<u>Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.</u>, 509 U.S. 209, 224-25 (1993) (emphasis supplied) (citations and internal quotation marks omitted).

While it is unclear whether RJT could, based on the facts alleged in the amended complaint, articulate any viable antitrust claim against Manchester, one thing is plain: RJT has failed to adequately allege a valid and relevant market in which Manchester allegedly wielded unlawful monopoly power. Accordingly, to the extent Manchester seeks dismissal of RJT's antitrust claims

11

(counts 1 and 2), its motion is granted. See, e.g., Queen City Pizza, 124 F.3d at 436 ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.").

II.  Tortious Interference with Business Relations.

To successfully state a claim for tortious interference with business relations under New Hampshire common law, a plaintiff must allege four elements: (1) it had a contract with a third party; (2) the defendant was aware of that contract; (3) the defendant wrongfully induced the third party to breach the contract; and (4) the plaintiff's asserted damages were proximately caused by the defendant's wrongful conduct. See Roberts v. General Motors Corp., 138 N.H. 532, 539 (1994). See also Barrows v. Boles, 141 N.H. 382, 392-93 (1996). Construed in

12

the light most favorable to plaintiff, the amended complaint adequately alleges each of those essential elements.

In fact, Manchester does not assert that RJT's amended complaint omits one or more essential elements of a viable claim. Instead, it says that RJT has made "baseless" claims that are "false and sham" which should, therefore, be stricken under Rule 12(f). See Fed. R. Civ. P. 12(f) (authorizing the court to strike "any redundant, immaterial, impertinent, or scandalous matter."). In support of that view, Manchester says:

> It is submitted that Plaintiff made the baseless statement contained in paragraph 41 of Plaintiff's Amended Complaint [i.e., that Manchester intended to cause Daimler Chrysler to breach its agreement with RJT] to create a "false and sham" claim for tortious interference. The fact that Plaintiff did not include a tortious interference claim in its original Complaint is evidence that the claim is "false and sham." Based upon the facts pled and the timing of the pleadings, it must be assumed that Daimler Chrysler had not yet terminated business relations with Plaintiff at the time Plaintiff filed this lawsuit, otherwise it would have been pled in Plaintiff's original complaint. How can R&J now allege (more than a year later) that the subsequent termination of the consignment agreement by Daimler Chrysler is attributable to Manchester's threat to sue R&J when in fact R&J had already filed the lawsuit?

13

Defendant's memorandum at 5 (emphasis supplied).  Although it has posed an interesting rhetorical question, Manchester has not pointed to any evidence supportive of its view that RJT's tort claim is "false and sham."  Of course, the mere timing of Daimler Chrysler's decision to terminate its business relationship with RJT (even if it did not implement that decision until after RJT filed this suit) says nothing about what actually prompted that decision.  And, while Manchester's theory might (if proved) serve as a viable defense to RJT's claim, standing alone it is insufficient to entitle Manchester to the relief it seeks.


## Conclusion

For the foregoing reasons, Manchester's motion to dismiss antitrust claims and strike tortious interference claims (document no. 31) is granted in part and denied in part.  RJT's antitrust claims (counts 1 and 2) are dismissed for failure to state a viable claim.  In all other respects, however, Manchester's motion is denied.  Manchester's motion to dismiss and strike (document no. 26), which raises essentially the same issues discussed in this order, but relates to claims raised in

14

RJT's original complaint and what RJT initially captioned as "counterclaims," is denied as moot.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 10, 2001

cc:  Edward D. Philpot, Jr., Esq.
     Marc R. Scheer, Esq.